IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| TERRY L. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CV-425 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, under 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 13] will be granted, and plaintiff's motion for judgment [doc. 11] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff filed the present application in April 2004, alleging disability on the basis of "back problems." [Tr. 57, 75]. He alleged a disability onset date of July 17, 2002. [Tr. 57]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in

November 2006.

In February 2007, the ALJ issued a decision denying benefits. She found that plaintiff suffers from the severe impairments of "degenerative disc disease of the lumbar spine, diabetes mellitus, left shoulder pain, and right ankle pain," but that these conditions did not meet or equal any impairment listed by the Commissioner. [Tr. 15-16]. Plaintiff's subjective complaints were deemed "not entirely credible," particularly in light of significant issues concerning pain medication prescriptions. [Tr. 16, 18]. The ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light exertion. [Tr. 16]. Relying on vocational expert testimony, the ALJ further concluded that plaintiff remains able to perform jobs existing in significant numbers in the economy. [Tr. 19-20]. Plaintiff was accordingly found ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on September 14, 2007. [Tr. 5]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Plaintiff has timely brought his case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff was born in 1954. [Tr. 57]. He has a twelfth grade education. [Tr. 203]. His past relevant work is as a bolt machine operator in coal mines. [Tr. 76].

2

Plaintiff alleges that he is in constant back and leg pain rendering him "numb from [the] waist down." [Tr. 86, 98]. A 2004 ankle injury purportedly left him in greater pain and unable to stand or walk for any extended length of time. [Tr. 108].

Plaintiff testified that he has not had a drivers licence since 1974 due to driving while intoxicated. [Tr. 324-25]. Nonetheless, the administrative record indicates that he currently complains of "often" experiencing right leg numbness "*when he drives*" [Tr. 216, 337].

III.

*Relevant Medical Evidence*

On May 22, 2001, Dr. Jean-Francois Reat diagnosed "left shoulder impingement syndrome with rotator cuff tendonitis." [Tr. 241]. Dr. Reat performed an injection, referred plaintiff for physical therapy, and instructed plaintiff to return in four weeks for reassessment. [Tr. 241]. The record does not reflect any follow-up care after the May 22 appointment.

Plaintiff visited orthopedist Dr. Edward Kahn in September 2002 with complaints of back pain. Straight leg testing was negative and full strength was present in both legs. Plaintiff exhibited "moderate difficulty" moving about. [Tr. 238]. A lumbar MRI showed "moderate degeneration" and "some slight bulging" but no significant nerve root compression. [Tr. 236-37]. In October 2002, Dr. Kahn wrote that there was "[n]othing that I would look at and state would cause severe pain." [Tr. 236]. The following month, Dr.

3

Kahn wrote that plaintiff "again is exhibiting symptoms of significant pain magnification." [Tr. 234]. Dr. Kahn also again wrote that plaintiff "has some arthritic changes in his back, but certainly nothing to account for the amount of pain that he is complaining of." [Tr. 233].[1]

November 2002 total body imaging suggested arthritic changes in the hands, shoulders, left wrist, and right knee. [Tr. 171]. Dr. Robert Davis performed back surgery in March 2003 in the L5 range. [Tr. 157]. A July 2003 lumbar MRI continued to show some degenerative changes. [Tr. 187]. Plaintiff complained to Dr. Davis that same month regarding persistent significant pain in the lower back and legs. [Tr. 182]. In September 2003, plaintiff returned to Dr. Davis "complaining bitterly of pain in his lower back." [Tr. 181].

Associated Therapeutics, Inc. performed a Functional Capacity Evaluation ("FCE") the following week. Plaintiff rated his pain at six out of ten and reported intermittent periods of numbness. [Tr. 130]. Based on testing results, the FCE concluded that plaintiff is capable of performing a range of medium work. [Tr. 122-30]. Surgeon Davis adopted the FCE, which he termed "valid." [Tr. 180].

Dr. Davis then referred plaintiff to pain medicine specialist Edward Workman. On examination, Dr. Workman noted positive straight raise testing of the left leg, along with

---

[1] Similarly, plaintiff's complaints of severe left wrist pain were evaluated by orthopedists Ronald French and Jeffrey Uzzle over a two month period in 2002 and 2003. [Tr. 224-31]. The evaluation included electrodiagnostic testing. Dr. French initially restricted plaintiff to "light duty work 20 lb. lifting restriction" [Tr. 226] but by February 2003 "release[d] him to full duty work in regards to the left wrist." [Tr. 224]. He told plaintiff "that I could find nothing seriously wrong with his wrist and certainly nothing to account for severe pain." [Tr. 224].

multiple lumbar trigger points and evidence suggestive of facet disease. [Tr. 203]. Dr. Workman prescribed Klonopin for nighttime spasms and Percocet "for intractable pain." [Tr. 200]. Plaintiff continued to report severe pain over the next three months, and the Klonopin and Percocet prescriptions were continued. [Tr. 197-99]. On December 17, 2003, Dr. Workman joined Dr. Davis in adopting the FCE and wrote that plaintiff "may return to work." [Tr. 196].

On January 6, 2004, Dr. Workman noted that plaintiff's urine drug screen was *negative* for his prescribed medications. [Tr. 197]. Dr. Workman placed all prescriptions on hold pending bloodwork that date. [Tr. 197]. Although plaintiff insisted that he had taken his Percocet and Klonopin within the last 24 hours, the blood serum results were also negative for both drugs. [Tr. 196-97]. Dr. Workman wrote, "Given the low detection level of the assays, this patient is either not taking either medicine, or, (*very unlikely*) his metabolism of both agents is so rapid that non drug is present at initial hepatic pass thru. The probability of rapid metabolism on both sites *is very low*. No further narcotics or scheduled drugs from this office." [Tr. 196] (emphasis added). The administrative record indicates that plaintiff did not return to Dr. Workman after the drug screens. [Tr. 196].

Plaintiff instead reported to Dr. Febe Wallace with complaints of "chronic" back pain, "burning" leg pain, and "acute" right arm pain. [Tr. 278]. Plaintiff "need[ed] some pain medication." [Tr. 278]. Dr. Wallace observed positive impingement and

5

apprehension signs of the right shoulder. [Tr. 278].[2] There was, however, no tenderness and both range of motion and grip strength were full. [Tr. 278]. Straight leg raise testing was negative. [Tr. 278]. Dr. Wallace provided a Lorcet prescription but wrote that she was "not interested in a steady diet of narcotics." [Tr. 278].

At his next appointment on February 27, 2004, plaintiff continued to complain of pain "so bad he can't sleep." [Tr. 277]. Dr. Wallace's findings were again mostly unremarkable. [Tr. 277]. She provided plaintiff with multiple narcotic prescriptions. [Tr. 277]. Plaintiff returned in two weeks, reporting that the narcotics did not help and were "like taking water." [Tr. 276]. Dr. Wallace observed lumbosacral and right shoulder tenderness, but straight leg raise testing was again negative. [Tr. 276]. Dr. Wallace wrote that she was "very suspicious about this patients [sic] drug request" and "asked him to bring some documentation from his attorney or someplace." [Tr. 276]. Dr. Wallace ordered a "drug screen . . . on his return." [Tr. 276].

At his next appointment on March 26, 2004, Dr. Wallace's observations were benign except for lumbosacral tenderness. [Tr. 275]. Drug screening was this time positive for at least one of the prescribed narcotics. [Tr. 291]. At April and May 2004 appointments, plaintiff's back pain was reportedly the same but his shoulder had improved. [Tr. 273-74]. Examination was again unremarkable except for "mild" lumbosacral tenderness. [Tr. 273].

---

[2] A positive impingement sign is suggestive of, *inter alia*, tendinitis or rotator cuff injury. *Dorland's Illustrated Medical Dictionary* 1758 (29th ed. 2000).

6

Dr. Wallace diagnosed diabetes in June 2004. [Tr. 271]. That condition was soon described as improving, even though plaintiff was not adhering to a regular diet. [Tr. 269]. In early August 2004, Dr. Wallace noted worsening lumbosacral tenderness and positive straight leg raise testing, but denied two requests for an early narcotic prescription refill. [Tr. 267-68].

Dr. Joseph Johnson performed a consultative examination in August 2004. He noted reduced range of motion of the back, along with a positive straight leg raise on the right. [Tr. 207]. Lumbar imaging showed only mild narrowing and spurring. [Tr. 208].

Nonexamining Dr. Nathaniel Robinson generated a Physical RFC Assessment later in August 2004. Dr. Robinson opined that plaintiff could work at the light level of exertion subject to engaging in postural changes on no more than an occasional basis. [Tr. 210-14].

Plaintiff returned to Dr. Reat in November 2004 following a fall. Dr. Reat diagnosed a right ankle fracture. [Tr. 222]. He performed surgery on November 4, 2004. [Tr. 221-22]. On February 18, 2005, Dr. Reat noted some tenderness, and plaintiff complained of ankle pain and periodic swelling. Dr. Reat considered the fracture to be "doing well." He discharged plaintiff but wrote that he would consider removal of the surgical hardware in November 2005. [Tr. 218]. The administrative record does not indicate that plaintiff sought further orthopedic care regarding his ankle.

Nonexamining Dr. Celia Gulbenk generated a Physical RFC Assessment in April 2005. Dr. Gulbenk offered the same opinions as Dr. Robinson - that plaintiff could work at the light level of exertion subject to engaging in postural changes on no more than an occasional basis. [Tr. 243-47].

Dr. Wallace ordered two more drug screens in the spring of 2005. One of the screenings failed to show the presence of plaintiff's prescribed Oxycodone. [Tr. 257]. Plaintiff offered the explanations that he had been out of pills for "a day or so" and that "he's been told he is a fast metaboilizer [sic] of pain medicine." [Tr. 257]. Dr. Wallace noted lumbosacral and right ankle tenderness, along with "markedly decreased range of motion in the right ankle." [Tr. 255, 257-58]. In May 2005, Dr. Wallace wrote that the surgical screw in plaintiff's ankle was "easily palpable," but by July 2005 she described the ankle as "pretty stable." [Tr. 253-55].

Dr. Sanjay Thakur ordered a lumbar MRI in March 2006. The testing showed degenerative disc disease at L3-4, L4-5, and L5-S1. [Tr. 296]. Although the administrative record does not clearly evidence any treating relationship, Dr. Thakur completed a physical RFC assessment on September 29, 2006. [Tr. 315-19]. In material part, Dr. Thakur opined that plaintiff cannot lift at even the sedentary level of exertion, cannot complete an eight-hour workday, and cannot engage in certain postural activities such as climbing. [Tr. 316-17]. As the basis for his opinions, Dr. Thakur cited chronic pain, prior surgeries, and the need to use a cane "all the time." [Tr. 316-17].

8

Dr. Wallace submitted an undated RFC assessment, also opining that plaintiff is incapable of working at even the sedentary level of exertion. [Tr. 215-17]. In support of her opinions, Dr. Wallace cited lumbar surgery, back pain, leg numbness secondary to sitting, degenerative disc disease, left shoulder tendinitis, loss of balance, and positive straight leg raise testing. Although the assessment is undated, it was apparently completed on October 8, 2004, as Dr. Wallace wrote that date, "Patient is applying for his disability. I went through *with him* a work related activity sheet." [Tr. 264] (emphasis added).

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

9

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Claimants bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

V.

*Vocational Expert Testimony*

Vocational expert James Miller ("Dr. Miller" or "VE") testified at plaintiff's administrative hearing. Dr. Miller categorized plaintiff's past relevant work as medium and semi-skilled. [Tr. 338].

The ALJ presented a hypothetical claimant of plaintiff's education and work history. The claimant would be limited to light exertion with no exposure to heights or balancing, and with no more than occasional postural activities such as climbing. [Tr. 339].

In response, the VE testified that the hypothetical claimant could not return to plaintiff's past relevant work but could perform other jobs existing in the regional and national economies. [Tr. 339-40]. If Dr. Thakur's or Dr. Wallace's assessment were adopted, or if plaintiff's subjective complaints were fully credited, Dr. Miller testified that all employment would be precluded. [Tr. 340-42].

11

VI.

*Analysis*

On appeal, plaintiff criticizes the weight given by the ALJ to virtually all of the opinion evidence. As noted above, the ALJ concluded that plaintiff retains the RFC for the light level of exertion with only occasional postural activities and no work involving balancing or unprotected heights. [Tr. 16].

Plaintiff first criticizes the ALJ's reliance on the opinions of treating physicians Davis and French. The ALJ gave "great weight" to the early opinions of these doctors that plaintiff could perform a range of light exertion. Plaintiff argues, "Neither physician's opinion addressed the restrictions and limitations of the Plaintiff relative to his chronic right ankle pain, chronic right knee pain, shoulder pain, or diabetes mellitus." [Doc. 12, p. 3].

The court initially notes that the ALJ was generous in mentioning the light exertion opinions of back surgeon Davis and orthopedist French, because Dr. Davis subsequently adopted the Associated Therapeutics FCE finding plaintiff capable of *medium* work, and because Dr. French subsequently released plaintiff to "full duty" work. [Tr. 180, 224].[3] While the FCE, and Drs. Davis's and French's opinions, predate plaintiff's ankle and diabetes conditions, the FCE did *not* predate plaintiff's complaints of shoulder and knee pain. [Tr. 171, 203, 241]. The FCE tested plaintiff's capabilities in all extremities and does not indicate that plaintiff offered the examiner any complaints pertaining to shoulder or right

---

[3] The FCE was also adopted by treating pain specialist and neuropsychiatrist Dr. Workman. [Tr. 196].

12

knee pain. [Tr. 122-30]. Therefore, Dr. Davis did consider plaintiff's knee and shoulder via his adoption of the FCE testing results.

As for plaintiff's diabetes, his briefing to this court cites no vocational limitations secondary to that condition. [Doc. 12, p. 3-6]. The argument is accordingly waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we decline to formulate arguments on [plaintiff's] behalf, or to undertake an open-ended review of the entirety of the administrative record . . . . Rather, we limit our consideration to the particular points that [plaintiff] appears to raise in her brief on appeal."). In addition, plaintiff's diabetes was consistently described as improving following the initial diagnosis, despite his failure to follow dietary recommendation. [Tr. 269].

As for plaintiff's ankle, his surgeon Dr. Reat considered the fracture to be "doing well" and he discharged plaintiff in February 2005, even though some pain and tenderness was still present. [Tr. 218]. The administrative record does not indicate that plaintiff sought further orthopedic care regarding the ankle. Although Dr. Wallace subsequently noted palpability of surgical hardware and reduced range of motion, by July 2005 she described the ankle as "pretty stable." [Tr. 253].

Plaintiff also argues that the assessments of Drs. Wallace and Thakur should have received controlling weight. The opinion of a treating physician is entitled to great weight if supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the

13

Commissioner may reject the opinion of a treating physician if, in part, a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

The court first notes that the record does not evidence a treating relationship with Dr. Thakur. That source's opinion is therefore not entitled to the deference typically due a treating source. In addition, the ALJ articulated a valid basis for rejecting the opinions of both doctors. She explained that each assessment "is not consistent with the record as a whole . . . is not supported by objective findings, and appears to be based on the claimant's subjective allegations." [Tr. 18]. It also appears that Dr. Wallace's assessment was completed with plaintiff's input. [Tr. 264].

Ultimately, plaintiff's claim hinges on the credibility of his subjective complaints. Certainly, the record documents lumbar, shoulder, and ankle conditions that could be expected to cause some discomfort and limitation. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that plaintiff's documented conditions are not "of such a severity that [they could] reasonably be expected to produce the alleged *disabling* pain." *See id.* at 853 (emphasis added).

Orthopedists Kahn and French reviewed various studies and opined that plaintiff's back and arm conditions should not be producing the reported degree of severe pain. [Tr. 224, 233, 236]. Dr. Kahn at one point noted that plaintiff "again is exhibiting symptoms of significant pain magnification." [Tr. 234].

14

Most striking are the discrepancies pertaining to plaintiff's prescription drug usage. Twice, screening was negative for two prescribed drugs (anti-spasm and narcotic pain relief) that plaintiff insisted he had taken that date for his purportedly intractable pain. While plaintiff dismisses this evidence as merely the result of high metabolism, Dr. Workman's analysis bears repeating: "Given the low detection level of the assays, this patient is either not taking either medicine, or, (*very unlikely*) his metabolism of both agents is so rapid that non drug is present at initial hepatic pass thru. The probability of rapid metabolism on both sites *is very low*." [Tr. 196] (emphasis added).

If in Dr. Workman's view it is "very unlikely" that plaintiff's excuse is valid, then conversely it is "very *likely*" that plaintiff was not forthcoming with Dr. Workman regarding his alleged pain and his alleged need for pain medication. Substantial evidence would therefore support the conclusion that plaintiff's pain complaints are overstated, and that he is obtaining narcotic prescriptions for other reasons. Even Dr. Wallace at times questioned plaintiff's medication usage. [Tr. 257, 276, 278]. The ALJ correctly cited this evidence in support of his credibility determination. [Tr. 18].[4]

The ALJ sufficiently explained her analysis of the diverse opinion evidence in this case. She took into account plaintiff's documented conditions and his questionable subjective complaints by restricting him to an RFC for only a range of light work. It is noted

---

[4] Although not addressed by the ALJ, the veracity of plaintiff's statements is further impacted by the fact that he has apparently driven for more than thirty years without a valid driver's license.

15

that her RFC conclusions were more restrictive than the medium exertion opinion of three record sources. It is further noted that her conclusions are more restrictive than those of the nonexamining state agency physicians, in that she allowed no work involving balancing or unprotected heights.

As is her role, the ALJ weighed the evidence in this case and adequately explained her decision. The substantial evidence standard of review permits that "zone of choice." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

                                            s/ Leon Jordan
                                    United States District Judge